**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| DEBRA DIECKERT | : | |
| 228 Charing Way | : | |
| Mount Laurel, NJ   08054 | : | |
| | : | Civil Action No. |
| vs. | : | |
| | : | |
| FAIRWAY INDEPENDENT MORTGAGE | : | |
| CORPORATION | : | Jury Trial Demanded |
| 5301 Limestone Road | : | |
| Wilmington, DE 19808 | : | |

## COMPLAINT

### I.   PRELIMINARY STATEMENT

1.      Plaintiff, Debra Dieckert, brings this action pursuant to the Family Medical Leave Act (hereinafter "FMLA"), the Americans with Disabilities Act (hereinafter "ADA"), the New Jersey Law Against Discrimination (hereinafter "LAD") and the Age Discrimination in Employment Act of 1967 (hereinafter "ADEA") as amended (OWBPA).   Plaintiff seeks equitable relief, compensatory and punitive damages, costs and attorney's fees from Defendant for Defendant's contractual interference, retaliation and other tortious actions.

### II.   JURISDICTION AND VENUE

2.      Jurisdiction over this action is conferred on this Court by U.S.C. §1331 as this is one of a Federal Question.

3.      Plaintiff has complied with all jurisdictional prerequisites as she has exhausted all relevant administrative remedies which she may be required and also pursues this matter pursuant to the New Jersey "LAD".

4.      Venue is proper in the United States District Court in New Jersey pursuant to 28 U.S.C. §1331.

5.      At all times material hereto, Defendant, Fairway Independent Mortgage Corporation (hereinafter "Fairway") was engaged in an industry affecting commerce.

6.      At all times material hereto, Defendant Fairway was an employer pursuant to the above referenced statutes.

7.      At all times material hereto, Plaintiff is afforded protections provided under "FMLA", the "ADA", the New Jersey "LAD" and the "ADEA" as Plaintiff was retaliated against and terminated from her position due to her disability and age.

8.      At all times material hereto, Plaintiff was subjected to severe and pervasive discrimination as enumerated supra.

9.      This Honorable Court maintains jurisdiction over this matter as it is one of Federal Question with concurrent jurisdiction pursuant to the New Jersey "LAD".

**III.   PARTIES**

10.     Plaintiff, Debra Dieckert, is an adult female over the age of 40.

11.     Plaintiff resides at the above captioned address.

12.     Upon information and belief, Defendant Fairway operates a business that provides mortgage and mortgage related financing and financial services where Plaintiff was employed remotely from her home with Defendant having a business address located at the above captioned address.

13.     At all times material hereto, the actions of the Defendant enumerated within this Complaint occurred within the State of New Jersey as Plaintiff performed all job related employment services remotely.

## IV.   **FACTUAL BACKGROUND**

14.     Plaintiff was hired on or about January 29, 2016 as a Mortgage Processor.

15.     Plaintiff's initial salary was $60,000.00 with a bonus premised upon the number of loans that Plaintiff was able to close.

16.     Plaintiff was terminated from her position on or about July 18, 2022 as a direct result of her disability and age.

17.     As part of Plaintiff's position as a Mortgage Processor with the Defendant, Plaintiff was required to perform all background requirements associated with the goal of closing loans by and on behalf of the Defendant.

18.     At all times material hereto, Plaintiff was supervised by Denise Smith, an Operations Manager working out of the Wilmington, Delaware, branch of Defendant.

19.     After approximately two to three months after her employment, Plaintiff advised her immediate supervisor, Denise Smith, that she was diagnosed with multiple sclerosis, with this diagnosis not impairing her ability to perform work related duties. However, Plaintiff did advise Defendant Representative Smith that she would need accommodations for medical appointments and/or treatment due to her diagnosis.

20.     In approximately 2019, Plaintiff began having significant issues with her back and legs.

21.     Upon Plaintiff's visit to company headquarters located in Madison, Wisconsin, Plaintiff visualized numerous employees working with veri desks which allowed them to sit and stand at their desks on an as needed basis.

22.     Thereafter, Plaintiff emailed Human Resources of Defendant Fairway asking if she could be provided with a veri desk.

23.     Plaintiff thereafter asked Kim Grim, a supervisor at Defendant Fairway, about this request.

24.     Without any conversation and/or discussion, Defendant Representative Grim advised Plaintiff that she was not eligible for a veri desk because the desk would come out of Defendant Representative Grim's profit and loss statement.

25.     Plaintiff thereafter was required to have her own children buy her a veri desk as a gift.

26.     In 2020, Defendant Representatives Smith and Grim asked Plaintiff to work with a newer branch of Defendant Fairway run by Defendant Representative Renee Gonzalez.

27.     During the course of these conversations, Defendant Representative Grim would say, "I feel like I'm talking to the mob boss Renee Gonzalez and the Jewish mom Debbie, what a combination."

28.     On Friday, June 10, 2022, Plaintiff had an appointment with an orthopedic physician at Reconstructive Orthopedics associated with back pain.

29.     Plaintiff advised her supervisor, Defendant Representative Smith, of the need for her day off.

30.     Plaintiff was advised subsequent to said appointment that her back pain was due to extreme scoliosis that will require major spinal surgery.

31.     Thereafter, Plaintiff was referred to Dr. Vincent Arlat of Penn Medicine for a surgical consultation.

32.     Plaintiff thereafter had an appointment with Dr. Arlat on or about July 8, 2022 to discuss further treatment options, including surgery.

33.     On June 13, 2022, Plaintiff advised Defendant Representative Smith that she would require another personal day off, which was the July 8, 2022 date for her surgical consultation.

34.     On Friday, July 8, 2022, Plaintiff had an appointment with Penn Medicine and was advised she required spinal fusion surgery; would require a three month recovery period and was required to be placed on temporary disability.

35.     On Monday, July 11, 2022, when Plaintiff arrived at work, she informed Defendant Representative Denise Smith that the result of her appointment on Friday would require spinal surgery and she would need to take a medical leave of absence.

36.     On Monday, July 11, 2022, Plaintiff thereafter emailed Human Resources to notify them that she would need surgery and was provided basic direction in the medical leave policy of the company.

37.     On Monday, July 18, 2022, an operations call with Defendant Representative Smith and Defendant Representative William Moran occurred in which the above referenced Defendant Representatives advised everyone on the call that Defendant Fairway was strong and there would be no further layoffs at the company.

38.     Shortly after the call of July 18, 2022, approximately one hour after said call, Defendant Representative Smith called Plaintiff and advised her that she had to let her go and that she had no prior knowledge of this situation.  Defendant Representative Smith also advised Plaintiff that Plaintiff's layoff was in no way due to her job performance.

39.     Plaintiff thereafter asked Defendant Representative Smith if she could find another position for Plaintiff at the company since Plaintiff worked remotely.

40.     Plaintiff was advised by Defendant Representative Smith that she could not find another position for her at the company because Plaintiff was seeking time off for her surgery.

41.     On or about July 19, 2022, Plaintiff received an email with a fourteen (14) page separation notice from Human Resources which constituted a separation agreement for Plaintiff.

42.     When Plaintiff did not sign the above referenced separation agreement, Plaintiff received multiple emails and correspondence from Anna Rodriguez, General Counsel for Defendant Fairway, that Plaintiff was required to sign said document.

43.     Plaintiff advised Counsel Rodriguez at that time that she believed her separation from employment was due to her request for a medical leave of absence.

44.     Thereafter, Plaintiff immediately received a phone call from Human Resources.

45.     During the course of Plaintiff's employment, Plaintiff never received any performance related reviews.

46.     At all times relevant hereto, Plaintiff was not in any way on a performance improvement plan or been advised that her performance was lacking in any capacity.

47.     At all relevant times hereto, Plaintiff performed her job related duties in a more than satisfactory manner.

48.     At all times material hereto, Defendant management and ownership of Defendant were acting in the course and scope of their employment in terms of their conduct towards Plaintiff on a daily basis.

49.     Any acts or omissions attributable herein to Defendant, were committed

or omitted by its principals, directors, officers, managers and/or employees who were acting in the course, scope and color of their employment with said Defendant.

50.     At all times material hereto, Defendant Managerial Representatives aided and abetted the aforementioned discrimination to which Plaintiff was subjected thereto.

51.     The aforementioned conduct of the Defendant was materially adverse and would dissuade a reasonable worker from exercising and/or attempting to exercise their rights and benefits under the law.

52.     Defendant had a continuing need for the work Plaintiff had been performing and in no way advised Plaintiff of any dissatisfaction with her work product.

53.     As a direct and proximate result of Defendant's acts and/or omissions including discriminatory practices, Plaintiff was:

        a)     discharged from her employment to her great financial detriment and loss;

        b)     had her ability to work and find new work interfered with because of the actions of the Defendant;

        c)     was caused great pain and suffering, emotional loss, hostility and upset to Plaintiff;

        d)     caused Plaintiff to suffer severe embarrassment, humiliation and depression directly related to Defendant's conduct.

## COUNT I

## DEBRA DIECKERT vs.  FAIRWAY INDEPENDENT MORTGAGE CORPORATION

## VIOLATION OF THE AMERICAN WITH DISABILITIES ACT ("ADA")

54.     Plaintiff hereby incorporates by reference all of the aforementioned allegations set forth above.

55.     The conduct of Defendant and its treatment of Plaintiff in her employment violated the "ADA" as Plaintiff's discharge was based on false pretenses and due to her disability and/or age.

56.     At all times material hereto, Plaintiff had the experience and the know how to perform her job related duties yet was never provided any opportunity for a different position from the Defendant due to her need for medical leave.

57.     Plaintiff's medical condition, multiple sclerosis, is covered under the Americans with Disabilities Act ("ADA") and, as such, Plaintiff had a recognized disability for which she was entitled to a reasonable accommodation.

58.     Defendant was fully aware of Plaintiff's medical status, including that of Defendant Representative Smith, yet Plaintiff was never granted the opportunity to return to her employment after her need for major spinal surgery.

59.     At all times relevant hereto, other employees, including family members, of Defendant supervisors, remained in their employment related positions without termination.

60.     Plaintiff was never given the opportunity to have a full interactive

dialogue and/or exchange with the Defendant to address what her additional medical

needs would be subsequent to her return to work due to her necessitated medical leave.

61.    Plaintiff further alleges that as an older employee of the Defendant, (62

years old), Plaintiff was treated in a disparate manner due to her age.

WHEREFORE, Plaintiff, DEBRA DIECKERT, demands judgment against the

Defendant, FAIRWAY INDEPENDENT MORTGAGE CORPORATION, including:

a)    a declaration of Defendant's actions as described herein violated the
       Americans with Disabilities Act ("ADA");

b)    equitable and declaratory relief;

c)    compensatory damages for Plaintiff's loss of past and present income and
       benefits; pain and suffering; inconvenience, embarrassment; emotional
       distress; and loss of enjoyment of life;

d)    punitive damages;

e)    payment of interest and Plaintiff's attorney's fees and costs associated
       with the filing of this action; and

f)    such other relief that this Court may deem appropriate under the
       circumstances.

## COUNT II

## DEBRA DIECKERT vs.  FAIRWAY INDEPENDENT MORTGAGE CORPORATION

## VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION ("LAD")

62.    Plaintiff hereby incorporates by reference all of the aforementioned

allegations set forth above.

63.     At all relevant times hereto, Plaintiff was entitled to all protections associated with the New Jersey Law Against Discrimination as Plaintiff worked remotely in the State of New Jersey.

64.     At all relevant times hereto, Defendant conducted significant business in the State of New Jersey with Plaintiff always working remotely from her home in her title of Mortgage Processor.

65.     As enumerated above, all of the above referenced actions and/or conduct on the part of the Defendant violate the terms and conditions of the New Jersey "LAD".

66.     As such, Plaintiff would seek all relevant protections provided under the New Jersey "LAD".

WHEREFORE, Plaintiff, DEBRA DIECKERT, demands judgment against the Defendant, FAIRWAY INDEPENDENT MORTGAGE CORPORATION, including:

a)      a declaration of Defendant's actions as described herein violating the New Jersey Law Against Discrimination ("LAD");

b)      equitable and declaratory relief;

c)      compensatory damages for Plaintiff's loss of past and present income and benefits; pain and suffering; inconvenience, embarrassment; emotional distress; and loss of enjoyment of life;

d)      punitive damages;

e)      payment of interest and Plaintiff's attorney's fees and costs associated with the filing of this action; and

f)      such other relief that this Court may deem appropriate under the circumstances.

## COUNT III

## DEBRA DIECKERT vs.  FAIRWAY INDEPENDENT MORTGAGE CORPORATION

## VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT ("ADEA"), AS AMENDED "OWBPA"

67.     Plaintiff hereby incorporates by reference all of the aforementioned allegations set forth above.

68.     Plaintiff alleges that her disability is based in part to her age.

69.     At all relevant times hereto, Plaintiff was not afforded the opportunity to seek additional employment in another position due to her age and medical status.

70.     At all relevant times hereto, Plaintiff sought re-assignment from the company after being advised she was being laid off from her job having nothing to do with Plaintiff's job related performance.

71.     Plaintiff submits that her age was a factor and/or substantial cause in her termination as older employees were being terminated from the company.

WHEREFORE, Plaintiff, DEBRA DIECKERT, demands judgment against the Defendant, FAIRWAY INDEPENDENT MORTGAGE CORPORATION, including:

a)      a declaration of Defendant's actions as described herein violating the Age Discrimination In Employment Act ("ADEA"), as amended OWBPA;

b)      equitable and declaratory relief;

c)      compensatory damages for Plaintiff's loss of past and present income and

benefits; pain and suffering; inconvenience, embarrassment; emotional

distress; and loss of enjoyment of life;

d)      punitive damages;

e)      payment of interest and Plaintiff's attorney's fees and costs associated

with the filing of this action; and

f)      such other relief that this Court may deem appropriate under the

circumstances.

## COUNT IV

## DEBRA DIECKERT vs. FAIRWAY INDEPENDENT MORTGAGE CORPORATION

## VIOLATION OF THE FAMILY MEDICAL LEAVE ACT (RETALIATION) ("FMLA")

72.     Plaintiff hereby incorporates by reference all of the aforementioned allegations set forth above.

73.     At all time relevant hereto, Plaintiff sought a medical leave of absence to seek surgical intervention for her recognized disability, multiple sclerosis.

74.     Plaintiff sought a medical leave of absence from the Defendant so that she may secure proper care and treatment.

75.     Shortly after Plaintiff advising her employer for the need of said surgery and leave of absence, she was immediately terminated by her supervisor after being advised that her termination had nothing to do with her job related performance.

76.     As previously referenced above, Plaintiff never received any evaluations

indicating there were any issues or concerns with her job related duties.

77.     As a direct result of Plaintiff's request for said medical leave of absence, Plaintiff was terminated in direct violation of the retaliation provisions of the "FMLA".

WHEREFORE, Plaintiff, DEBRA DIECKERT, demands judgment against the Defendant, FAIRWAY INDEPENDENT MORTGAGE CORPORATION, including:

a)     a declaration of Defendant's actions as described herein violating the Family Medical Leave Act (Retaliation) ("FMLA");

b)     equitable and declaratory relief;

c)     compensatory damages for Plaintiff's loss of past and present income and benefits; pain and suffering; inconvenience, embarrassment; emotional distress; and loss of enjoyment of life;

d)     punitive damages;

e)     payment of interest and Plaintiff's attorney's fees and costs associated with the filing of this action; and

f)     such other relief that this Court may deem appropriate under the circumstances.

SAFFREN & WEINBERG

By: _____
        Marc A. Weinberg, Esquire
        Attorney for Plaintiff
        Saffren & Weinberg
        815 Greenwood Avenue, Suite 22
        Jenkintown, PA 19046
        (215) 576-0100
        mweinberg@saffwein.com